IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00079-REB-KLM

ETHEL WHITE DJIGMA,

    Plaintiff,

v.

MRS. HILLARY S., Medical Provider,
MRS. LT. LAWRENCE, Intake Officer D.R.C.D., and
MRS. RAE RICE, "Head" of Medical Staff,

    Defendants.

---

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendants' Motion for Summary Judgment** [Docket No. 16; Filed May 5, 2008] (the "Motion"). Plaintiff responded to the Motion on July 1, 2008 [Docket No. 30], and Defendants filed a reply on July 18, 2008 [Docket No. 34]. The Motion has been fully briefed. Pursuant to 28 U.S.C. § 636(b)(1) and D.C. Colo. L. Civ. R. 72.1.C, the Motion has been referred to this Court for recommendation. Having considered the pleadings and the docket in this case, the Court is fully advised of the issues. For the reasons set forth below, the Court recommends that the Motion be **GRANTED**.

## I. Factual Background and Complaint

While detained at a community corrections facility in Littleton, Colorado, Plaintiff filed a lawsuit against three Colorado Department of Corrections ("CDOC") officials [Docket No. 3; Filed January 14, 2008]. Claim I of Plaintiff's complaint asserts an Eighth Amendment

violation against Defendants for their alleged inadequate medical care of her foot while she was incarcerated by the CDOC at the Denver Women's Correctional Facility ("DWCF"). *Complaint* [#3] at 11. At the time of the filing of Plaintiff's complaint, she was proceeding *pro se*, but is now represented by counsel. In March 2008, Plaintiff was returned to the custody of the CDOC, and is presently incarcerated at the LaVista Correctional Facility [Docket No. 16-2 at 2].

In Plaintiff's complaint, she contends that prior to her incarceration by the CDOC, she seriously injured her foot after jumping from a fourth-story window. *Complaint* [#3] at 3. This pre-existing injury is not contested. *Motion* [#16] at 1. Plaintiff alleges that during her incarceration at DWCF from July 2006 to August 2007, Defendants provided inadequate medical care for her injured foot, which was still healing. Specifically, she claims that Defendants deliberately deprived her of an orthopedic boot she possessed when she was taken into custody and, therefore, that their care for her injury was deficient. *Complaint* [#3] at 4-10. She seeks damages for Defendants' "deliberate indifference to [her] medical needs . . . subject to cruel and unusual punishment, a right guaranteed by the 8th Amendment to the United States Constitution." *Id.* at 11.

It is not disputed that at the time of her arrival at DWCF, security officers at the facility took from Plaintiff an orthopedic boot that she had purchased prior to her incarceration. *Motion* [#16] at 5; *Response* [#30] at 3-4. These security officers are not named Defendants. *See Response* [#30] at 4. It is also not disputed that Plaintiff filed an administrative grievance regarding the deprivation of her orthopedic boot and appealed her claim through the three-step grievance process applicable to facilities within the CDOC [Docket No. 16-14]. *See Affidavit of Anthony Decesaro* [#16-13] at 2. Via her grievance,

2

Plaintiff requested that she be reimbursed for the cost of her orthopedic boot in the amount of $120.00. *Grievance* [#16-14] at 1. Her grievance was successful, and CDOC paid her the money that she requested. *Id.* There is no evidence, however, that Plaintiff filed any grievances through the three-step grievance process regarding a complaint that she received inadequate medical care. *Affidavit of Anthony Descesaro* [#16-13] at 2.

## II. The Motion

Defendants filed a Motion for Summary Judgment to dismiss Claim I of Plaintiff's complaint which asserts an alleged injury pursuant to the Eighth Amendment.[1] They argue that they are entitled to qualified immunity and that Plaintiff failed to exhaust her administrative remedies for the alleged injury. *Motion* [#16] at 3-10. Prior to filing a response, Plaintiff agreed with Defendants that discovery should be stayed pending resolution of the Motion [Docket No. 26]. The Court granted the unopposed motion to stay on June 6, 2008 [Docket No. 28]. Thereafter, Plaintiff filed her response to the Motion. She argues that she effectively exhausted her administrative remedies and that evidence exists regarding Defendants' deliberate indifference to Plaintiff's medical needs. *Response* [#30] at 3-8. She does not specifically address whether Defendants would nevertheless be entitled to qualified immunity. Defendants filed a reply which more forcefully asserts their position that Plaintiff failed to exhaust and specifically takes issue with Plaintiff's defenses to her obligations under the Prison Litigation Reform Act ("PLRA"). *Reply* [#34]

---

[1] Defendants also moved to dismiss Claims II and III of Plaintiff's complaint for lack of subject-matter jurisdiction [Docket No. 14]. Plaintiff conceded that her claims were barred by the Colorado Governmental Immunity Act, Colo. Rev. Stat. §§ 24-10-105, -106, -109 [Docket No. 31]. My Recommendation to grant Defendants' Motion to Dismiss is pending [Docket No. 35].

3

at 1-5. They also argue that given the limited evidence presented by Plaintiff in her response, she has failed to show that the Defendants personally participated in the alleged harm to Plaintiff. *Id.* at 6.

### III. Analysis

**A. Standard of Review**

Summary judgment is proper when the record before the court "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if the outcome could be decided in favor of either party. *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it could reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of evidence to support the nonmovant's case. If this burden is satisfied, the burden shifts to the nonmovant to show the existence of a genuine dispute of a material issue. The nonmoving party must go beyond the allegations in his pleading and provide "specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To satisfy his burden of providing specific facts, the nonmoving party must tender affidavits or other competent evidence. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). "[T]he nonmovant must do more than refer to allegations of counsel contained in a brief to withstand summary judgment. Rather, sufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024-25 (10th Cir. 1992). The identified factual record and inferences

therefrom are viewed in the light most favorable to the nonmoving party. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). However, the Court is not obligated to consider conclusory statements or testimony based on conjecture, subjective belief, or inadmissible evidence. *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999).

### B. Qualified Immunity

When a defendant asserts a qualified immunity defense in a summary judgment motion, the burden first falls to the plaintiff to make a two-pronged showing that qualified immunity is inapplicable. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995)). Plaintiff must first establish that the named Defendants violated a constitutional right. *Id.* Plaintiff must then establish that the right was clearly established at the time of the violation. *Id.* The second part of the test is only implicated if Plaintiff has satisfied the first part. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Medina*, 252 F.3d at 1128 (citing *Albright*, 51 F.3d at 1535). It is only when "the record . . . clearly demonstrate[s] the [P]laintiff has satisfied [her] heavy two-part burden" that the burden shifts back to Defendants to show that no genuine issues of material fact exist. *Id.*

Here, Defendants assert that they are entitled to qualified immunity as to Plaintiff's allegations that they provided her inadequate medical care. *Motion* [#16] at 3-6. As such, Plaintiff bears the initial burden to establish "that [D]efendant[s'] actions violated a constitutional or statutory right." *Albright*, 51 F.3d at 1535. A review of Plaintiff's Response convinces the Court that she has not done so. The primary reason for the Court's holding stems from Plaintiff's own recognition that "security," rather than these named Defendants,

5

"deliberately withheld" Plaintiff's orthopedic boot. *See Response* [#30] at 4. Indeed, through her attorneys, Plaintiff acknowledges that "plaintiff received extensive medical care [from Defendants] for her injured foot while in CDOC custody." *Id.* at 3. However, she contends that "most of that medical care was required by the aggravated condition of plaintiff's foot caused by the deliberate withholding of her orthopedic 'boot'." *Id.* The Court finds that (1) Plaintiff's inadequate medical care claim revolves around Plaintiff's allegation that she was deprived of her orthopedic boot upon her arrival at DWCF; and (2) there is no dispute that the named Defendants were not responsible for taking Plaintiff's orthopedic boot.

Although Plaintiff fails to set forth the standard for determining whether she has established an Eighth Amendment violation, I note that Plaintiff must establish that she was deprived of an objectively serious basic human need, and that Defendants subjectively acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 832-34 (1994). A medical need is considered objectively serious "if the condition 'has been diagnosed by a physician as mandating treatment . . . or is so obvious that even a lay person would easily recommend the necessity for a doctor's attention.'" *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2001)). As to the subjective component, the Court considers whether Defendants intended the deprivation, i.e., acted with deliberate indifference to the harm that could result. Deliberate indifference can only be proved by showing that Defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. For the purposes of this Recommendation, although Plaintiff has not made this showing, I assume that Plaintiff's foot injury was sufficiently serious to satisfy the objective component.

Turning to the subjective component, as an initial matter, I find that Plaintiff has failed to adequately allege the personal participation of these Defendants in the deprivation of her orthopedic boot. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim."). Indeed, the only evidence presented by Plaintiff of any named Defendant's involvement in causing her alleged injury is a notation contained in a health record written by an unknown nurse that states:

> Tracked down shoes taken at intake- per R. Rice shoes had label sketcher', and were denied by security. I have called laundry and they will call her over and try to fit her with a state boot tthat [sic] will accomodate [sic] her insoles. I spoke to Officer Wicks. If they can not [sic] fit her she will let me know so I can pursue other avenues . . . .

[Docket No. 30-2]. On the basis of this cryptic record, Plaintiff inexplicably contends that:

> This note reveals that the defendants Susan Lawrence and Rae Rice deliberately
>
> (a) Confiscated the plaintiff's medically required orthopedic shoes from the plaintiff on July 31, 2006, at intake, and
>
> (b) were aware that security had denied the plaintiff of this medical need.

*Response* [#30] at 4.

The Court disagrees with Plaintiff's interpretation of this notation in the medical record and the broad significance she attributes to it. First, under no reading of this notation can anything be said to implicate Defendant Lawrence. It neither names her nor attributes any conduct or knowledge to her. Second, the notation clearly indicates that security, and not a named Defendant, was responsible for the deprivation of Plaintiff's orthopedic boot. Moreover, the reference to "R. Rice" does not attribute any direct

7

involvement in the decision to take Plaintiff's orthopedic boot to this Defendant.  At most, it indicates that Defendant Rice was aware that Plaintiff's boot was taken upon her arrival at DWCF for security reasons.  Further, the Court notes that the evidence attached by Plaintiff does not assert any conduct that could be attributable to the only other named party, Defendant Hilary Victoroff (named in the complaint as "Mrs. Hillary S.").

As nothing in Plaintiff's Response can be interpreted to suggest that any named Defendant was responsible for taking Plaintiff's orthopedic boot, the only remaining allegation Plaintiff appears to assert is that "the result of this deliberate indifference to plaintiff's medical needs is shown by defendants' Argument (pages 5 through 6) – great medical consequences and pain, suffering and anguish." *Response* [#30] at 4.  Not only does Plaintiff fail to explain her position further and attribute specific deliberately indifferent conduct to the named Defendants, she asks the Court to derive the arguments and evidence to support <u>her</u> burden of proof from Defendants' Motion.

Accepting Plaintiff's invitation to delve into Defendants' pleadings to find evidence in satisfaction of the first part of her burden, the Court notes that the information provided in Defendants' Motion evidences that Defendants' medical care for Plaintiff's condition was extensive and responsive [Docket Nos. 16-5 through -11].  Within two weeks of Plaintiff's arrival at DWCF, Defendant Victoroff ordered treatment for Plaintiff, including the provision of a new orthopedic boot. *Affidavit of Defendant Victoroff* [#16-3] at 2.  She also scheduled appointments at an outside medical facility to have Plaintiff's foot examined by an orthopedic doctor. *Id.*  In between her visits with the outside doctor, Plaintiff was seen daily by the DWCF nursing staff.  *Id.* at 3.  Within a month and a half of Plaintiff's arrival at DWCF, she was given a short-leg cast and cane to use on a day-to-day basis, and a

wheelchair or crutches when she was required to walk longer distances. *Id.* After her cast was removed, she was given a cast shoe and provided continuous care for her foot dressings. *Id.* at 4. Within five months of Plaintiff's arrival at DWCF, she underwent surgery to correct the deformity in her foot that had been caused by her pre-existing injury. *Id.* She was provided with another cast, which was removed two months later. *Id.* After removal of the cast, Plaintiff was placed in a walker shoe, described as a "firm boot that provides stabilization to the patient so she can bear weight as tolerated." *Id.* After it was noted that she was walking painlessly, the walker shoe was replaced with tennis shoes fitted with Dr. Scholl's insoles. *Id.* at 5. Thereafter, custom orthotics and a medical shoe were provided to her. *Id.* In all, Plaintiff was seen by the outside medical facility eleven times, not including when she was hospitalized for surgery. *Id.* Further, she received extensive care for her foot injury by the staff at DWCF as evidenced by the twenty-five visits she had with Defendant Victoroff alone and the 325 pages of medical records Plaintiff accumulated in her twelve-month incarceration there [Docket Nos. 16-5 through -11]. Plaintiff has cited no evidence in contradiction of this medical history. To the extent that other pleadings exist which speak to Plaintiff's burden, Plaintiff has not directed the Court to consider them. *See Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) ("[S]ufficient evidence . . . must be identified by reference to a [pleading]. Without a specific reference, 'we will not search the record in an effort to determine whether there exists dormant evidence . . . .'" (citation omitted)); *SEC v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992) (noting that Court is not obligated to sift through record to find support for party's case).

There is absolutely nothing in Plaintiff's medical records or Defendants' Motion to

9

suggest that the named Defendants were deliberately indifferent to a serious medical need. On the contrary, the medical records indicate that Defendants' care went above and beyond that ordinarily provided to inmates. To the extent that Plaintiff's argument can be interpreted to suggest that the named Defendants were deliberately indifferent to her alleged serious medical need because they were aware that security took her orthopedic boot, there is absolutely no evidence that the named Defendants had the requisite intent to establish a causal connection between their conduct and Plaintiff's claimed constitutional violation. For instance, considering the affidavit of Defendant Victoroff, she noted that as soon as it was practicable to provide Plaintiff with a prescription orthopedic boot, one was provided to her. *Affidavit of Defendant Victoroff* [#16-3] at 3-4. Moreover the decision to provide Plaintiff with a prescription orthopedic boot was not within Defendant Victoroff's discretion, but rather had to be approved. *See id.* at 4. Given the amount of time Plaintiff spent in casts (making it impossible to fit her with an orthopedic boot) and Defendants' provision of a cane, wheelchair, crutches, walking boots, tennis shoes and insoles, surgery, wound dressings, visits with an outside orthopedic doctor, etc., I find that Plaintiff has failed to clearly demonstrate that Defendants were deliberately indifferent to her medical needs.

In addition, it should be noted that an inmate's difference of opinion concerning the medical care she received does not generally support a claim for deliberate indifference. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). "The question of whether a certain form of treatment should be prescribed 'is a classic example of a matter for medical judgment.'" *Tivis v. Beecroft*, No. 06-cv-02025-WYD-CBS, 2007 WL 2786434, at *10 (D. Colo. Sept. 24, 2007) (unpublished decision) (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). Further, "[t]he denial of specific [forms of treatment] . . . does not constitute

deliberate indifference on the part of Defendants." *Id.* Here, Plaintiff does not claim that she was denied medical treatment, "rather [she] merely disagrees with [Defendants'] medical judgment." *See id.* Indeed, the primary issue is Plaintiff's disagreement with the medical care she was provided, primarily centered on the named Defendants' alleged failure to retrieve or secure an orthopedic boot for Plaintiff.

Considering Plaintiff's medical records attached to Defendants' Motion, as Plaintiff has invited me to do, I find that she is unable to establish Defendants' subjective indifference to disregard Plaintiff's foot injury in satisfaction of the first prong of her initial burden. *Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993) (noting that where the "record does not even approach establishing a denial of adequate medical care, much less an issue relating to a culpable state of mind," summary judgment is proper). In addition, given that Plaintiff has failed to raise a dispute as to the reasonableness of her medical care, I find that no reasonable juror could conclude that the named Defendants violated her Eighth Amendment rights.

Further, nowhere in Plaintiff's response does she address the second prong of her initial burden, namely that the law was clearly established that the deprivation of Plaintiff's orthopedic boot by nonparties, while other extensive medical care was provided by Defendants, including alternate footwear, casts and surgery, was a constitutional violation. *See generally Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("[W]hether the right was clearly established . . . must be undertaken in light of the specific context of the case, not as a broad general proposition."). Because I find that Plaintiff has failed to establish that she suffered from a constitutional injury caused by the named Defendants, or that such unconstitutional conduct (if any had been alleged) was in violation of clearly established

11

law, I find that Defendants are entitled to qualified immunity.

To the extent that Plaintiff suggests that the Court should stay its Recommendation on the pending Motion, the Court rejects Plaintiff's request to do so. *See Response* [#30] at 8. Specifically, Plaintiff suggests that if she has not met her initial burden to establish the existence of a constitutional violation, a ruling on Defendants' Motion should be stayed to give her an opportunity to take discovery. *See id.* This suggestion is not well received. First, Plaintiff, through counsel, agreed to stay discovery in her case pending the outcome of this Motion. Second, it is improper to include requests for relief of this nature in a response to another motion. *See* D.C. Colo. L. Civ. R. 7.1(C). Third, given that Plaintiff has failed to suggest that other evidence may exist that tends to show that the named Defendants were deliberately indifferent to Plaintiff's medical needs, discovery on this issue would appear to serve no purpose. Fourth, a lack of discovery does not explain why Plaintiff wholly failed to address the second-prong of her initial burden which is primarily based on a legal, rather than factual, analysis.

Because Plaintiff has failed to satisfy her initial burden and has failed to demonstrate a dispute, Defendants are entitled to qualified immunity. Therefore, the burden does not shift to Defendants to further establish an absence of evidence to support Plaintiff's remaining claim. Given that, the Court need not address Defendants' contention that Plaintiff failed to exhaust her administrative remedies.

## IV. Conclusion

For the reasons stated above, the Court RECOMMENDS that the Motion be **GRANTED**, and that Claim I be **DISMISSED**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall

have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: September 17, 2008

BY THE COURT:

s/ Kristen L. Mix
U.S. Magistrate Judge
Kristen L. Mix
